UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**KRISTIN W.**,

    *Plaintiff,*

v.

**COMMISSIONER OF SOCIAL SECURITY**,

    *Defendant*.

No. 24-cv-08185

**OPINION**

**APPEARANCES**:

**Adrienne Freya Jarvis**
800 North Kings Highway, Suite 304
Cherry Hill, NJ 08034

    *On behalf of Plaintiff*.

**Catherine Elisabeth Hamilton**
**Shawn Cheree Carver**
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Kristin W.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Commissioner").[2] (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

The Court recites herein only those facts necessary for its determination of this appeal.

### A. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on December 22, 2021, alleging an onset date of disability beginning September 10, 2018, due to a variety of physical and mental impairments including white matter disease, jaw surgery, arthritis, hearing loss, tinnitus, motion imbalance, depression, anxiety, ulcers, digestive issues, esophagitis, gastroesophageal reflux disease, hernias, kidney disease, temporomandibular joint disease ("TMJ"), migraines, and cholesterol. (AR 84–123, 228–41, 258). Plaintiff's claims were denied initially on May 13, 2022, (AR 84–103), and upon reconsideration on August 18, 2022. (AR 104–23).

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

[2] The Court notes that Plaintiff's counsel received four extensions to file the opening brief and one extension to file the reply. (ECF Nos. 8, 10, 12, 14, 19). The Court ordered that Plaintiff's reply brief be filed by May 15, 2025. (ECF No. 19). Plaintiff filed her reply on May 19, 2025, without seeking leave of Court or providing any explanation for the delay. (ECF No. 20). In light of the repeated extensions and the absence of good cause, the Court exercises its discretion to disregard the reply brief. *Green v. Rowan Univ.*, No. 22-00039, 2023 WL 3675956, at *3 (D.N.J. May 26, 2023) (citing *Simpson v. City of Atl. City*, No. 04-4537, 2007 WL 869528, at *1 (D.N.J. Mar. 20, 2007)). In any event, consideration of the reply brief would not alter the outcome.

On September 2, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 151–152). A hearing was held on March 21, 2023. (AR 37–83). Plaintiff, who was represented by counsel, testified, as did a Vocational Expert ("VE"). (*Id.*). The ALJ issued a Decision Denial on August 30, 2023. (AR 14–36). Plaintiff sought review from the Appeals Council, which denied the request for review on June 7, 2024, making the ALJ's decision the Commissioner's final decision. (AR 1–6). Plaintiff timely filed this appeal on July 31, 2024, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff filed an application for DIB on December 22, 2021, alleging disability beginning September 10, 2018. (AR 228–41). She was 43 years old at the time of her alleged onset date and has a high school education. (AR 84–85). Plaintiff last worked in 2018 as a waitress at a diner, a position she held for approximately 11 years. (AR 44, 1598). She stopped working following a series of medical procedures, including lymph node and jaw surgeries. (AR 45–46).

At the March 21, 2023 administrative hearing, Plaintiff testified that she was unable to work due to a combination of physical and mental impairments, including bilateral carpal tunnel syndrome, left thumb arthritis, depression, and anxiety. (AR 47–49, 59). She described daily pain and numbness in both hands, worse on the left, and stated that she wore a wrist brace all day for left thumb arthritis. (AR 47). Plaintiff reported difficulty gripping and frequent dropping of objects, noting that her handwriting had become illegible. (AR 47–48). She testified that both hands were red, swollen, and painful at the time of the hearing. (AR 65). However, Plaintiff also testified that she had received injections in her hands for pain relief and wore a brace, which were helpful in alleviating some of her symptoms. (AR 47, 65).

Regarding her mental health, Plaintiff testified that she suffered from lifelong depression and anxiety, including panic attacks and crying episodes. (AR 59). She had previously received therapy but had not seen a mental health provider since 2019, in part due to cost barriers. (AR 58, 67). At the time of the hearing, she was taking only trazodone to aid with sleep. (AR 58). Plaintiff described difficulty concentrating, remembering appointments, and following through on tasks. (AR 55–56). Despite these limitations, Plaintiff testified that she was able to prepare simple meals, drive, perform light cleaning, care for pets, and engage in leisure activities like coloring and word searches. (AR 48, 55–57).

### C. Medical History

Plaintiff has been evaluated by numerous medical providers over the course of her disability claim and alleges disability based on a range of mental and physical impairments. (AR 258). On appeal, however, Plaintiff primarily focuses on her claimed inability to work due to mental limitations related to her difficulty handling stress and adapting to changes in the workplace, as well as manipulative limitations stemming from carpal tunnel syndrome and arthritis in her left thumb. The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

Plaintiff alleges disability due to anxiety and depression, with a history of substance use. She participated in residential detoxification and intensive outpatient treatment in early 2020. (AR 375–750). During this period, she reported severe panic attacks, depressed mood, and poor sleep. Providers diagnosed major depressive disorder, generalized anxiety disorder, and substance use disorder. (AR 388).

After her discharge in mid-2020, Plaintiff's mental health treatment was limited. She resumed care with her primary physician, who monitored her condition and prescribed psychiatric

medications. (AR 1520–1597). In April 2022, consultative examiner Dr. Theodore Brown assessed her as having moderately severe symptoms, including poor concentration, frequent crying spells, social withdrawal, and stress-induced hair-pulling. (AR 1598–1601). However, he did not complete a functional assessment, and no treating provider opined that Plaintiff's psychiatric conditions rendered her unable to work. State agency psychological consultants evaluated Plaintiff in May and July 2022. Both found that Plaintiff had moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace but retained the ability to perform simple, routine work in a low-stress environment. (AR 89–90, 99–100, 110–12, 120–22).

Plaintiff also alleges limitations from bilateral carpal tunnel syndrome and left thumb arthritis. An EMG performed in 2021 confirmed mild bilateral carpal tunnel syndrome. (AR 2175, 2216). X-rays showed mild to moderate arthritis in the left thumb. (AR 2415). Plaintiff was treated conservatively with splints and corticosteroid injections, which she testified were helpful. (AR 65, 2176). Her providers observed some tenderness and positive provocative tests but otherwise normal range of motion and no muscle atrophy. (AR 2175). Notably, Plaintiff did not pursue additional treatment following a December 2022 visit and did not provide any physician opinions identifying functional restrictions related to her hands. (AR 88, 98, 110, 120).

## II. <u>LEGAL STANDARD</u>

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir.

2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict

6

created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. <u>ALJ DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 10, 2018. (AR 20).

At step two, the ALJ determined that Plaintiff had the following severe impairments: generalized anxiety disorder, major depressive disorder, substance abuse disorder in remission, small vessel ischemic disease, and degenerative disc disease of the cervical and lumbar spine. (*Id.*). The ALJ also found that several of Plaintiff's other impairments—including bilateral carpal tunnel syndrome, left thumb arthritis, migraines, hearing loss, chronic obstructive pulmonary disease, and TMJ dysfunction—were non-severe because they did not cause more than minimal work-related limitations. (AR 20–22). In particular, the ALJ noted that Plaintiff's hand impairments were treated conservatively with splints and injections, yielded mild findings on diagnostic testing, and were not supported by ongoing treatment or any functional assessment identifying related limitations. (AR 21).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of any listing. (AR 22). Specifically, in evaluating the "paragraph B" criteria of the mental listings, the ALJ found that Plaintiff had moderate limitations in three broad areas—understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself—and a mild limitation in interacting with others. (AR 23). The ALJ also found that the "paragraph C" criteria were not satisfied. (AR 24).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform light work subject to the following limitations:

> [C]an occasionally climb, balance, stoop, kneel, crouch, and crawl. She can have no concentrated exposure to extreme cold, heat, or humidity. She can have no exposure to hazard such as machinery or heights. She can perform simple, routine, and repetitive tasks. She can occasionally interact with supervisors and coworkers, and never interact with the public.

(AR 24). In formulating this RFC, the ALJ considered the entire record, including Plaintiff's testimony, treatment history, and opinion evidence. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR 25–28). The ALJ noted that Plaintiff's physical exams were generally benign, her treatment was conservative and intermittent, and no treating or examining source opined that she had work-preclusive limitations. (*Id.*).

The ALJ considered the opinions of the state agency medical and psychological consultants, who opined that Plaintiff could perform a range of light, unskilled work with no manipulative limitations and only mild to moderate mental limitations. (AR 28; *see also* AR 84–123). The ALJ found those opinions persuasive, noting their consistency with the record. (AR 28). Although both state agency psychological consultants noted that Plaintiff would benefit from a "low stress environment," (AR 90, 100, 112), the ALJ did not expressly include that phrase in the RFC. Instead, the ALJ limited Plaintiff to simple, routine, and repetitive tasks, occasional interaction with supervisors and coworkers, and no interaction with the public. (AR 24).

At step four, the ALJ found that Plaintiff could no longer perform her past relevant work as a waitress. (AR 28–29). However, at step five, relying on the testimony of a vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy. (AR 29). Specifically, the ALJ identified the

9

representative occupations of mail clerk, routing clerk, and marker—each of which exists in significant numbers. (AR 30).

Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 10, 2018, through the date of the decision. (AR 30).

## IV. DISCUSSION

In her appeal, Plaintiff asserts that the ALJ committed reversible error in two primary respects. First, Plaintiff contends that the ALJ erred in formulating the RFC by failing to properly incorporate the findings of the state agency psychological consultants—particularly their assessment that she would require a "low stress environment"—and inadequately evaluated her testimony regarding anxiety, panic attacks, and difficulty with stress and routine changes.[3] (Pl.'s Br., ECF No. 15 at 19, 23–25). Second, Plaintiff contends that the ALJ erred at step two and in formulating the RFC by failing to account for the limiting effects of her bilateral carpal tunnel syndrome and left thumb arthritis. (*Id.* at 19–23). She further argues that the ALJ improperly discounted her subjective complaints regarding hand pain, weakness, and reduced functionality. (*Id.* at 24–25). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

### A. The ALJ Reasonably Accounted for Plaintiff's Mental Health Impairments and Adequately Addressed the State Agency Opinions and Symptom Testimony

---

[3] To the extent Plaintiff argues that the ALJ erred by failing to account for her participation in a residential treatment program during the adjudicated period, (Pl.'s Br., ECF No. 15 at 18), the Court finds this argument to be undeveloped and therefore waived. *See Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (citation omitted) (the inclusion of only "one conclusory sentence" in an argument constitutes an "undeveloped argument [that] has been waived"). In any event, Plaintiff's residential treatment addressed her substance abuse disorder, which cannot serve as the basis for disability. *See* 42 U.S.C. § 423(d)(2)(C).

Plaintiff argues that the ALJ erred by failing to include more restrictive limitations in the RFC related to her ability to adapt to stress, routine changes, and public interaction. Specifically, she contends that the ALJ improperly disregarded the state agency psychological consultants' opinions that she would require a "low stress environment" and failed to explain her reasons for not incorporating that phrase into the RFC. (*Id.* at 19, 23–25). Plaintiff also challenges the ALJ's evaluation of her symptom testimony regarding anxiety, panic attacks, and difficulty coping with changes and interpersonal interactions. (*Id.*).

These arguments are unavailing because the RFC adequately accounted for Plaintiff's moderate mental health limitations by restricting her to simple, routine, and repetitive tasks, occasional interaction with supervisors and coworkers, and no interaction with the public. (AR 24, 26–28). These restrictions are functionally equivalent to a "low stress environment." *See Beth D. v. Kijakazi*, No. 20-446, 2021 WL 4272849, at *9 (D.N.J. Sept. 21, 2021) (noting ALJ adopted RFC which defined low stress setting as "having only occasional changes in work setting[4] and only occasional interaction with the public"); *Noll v. Saul*, No. 18-02145, 2020 WL 5249141, at *6 (M.D. Pa. Aug. 3, 2020), *report and recommendation adopted in part, rejected in part*, No. 18-02145, 2020 WL 5232405 (M.D. Pa. Sept. 2, 2020) (collecting cases with same definition); *see also Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008) ("performing a 'simple routine task' typically involves low stress level work").

---

[4] While the ALJ did not include only occasional changes in work setting in the RFC, the ALJ explicitly explained her rationale for not including this limitation, and the Court finds that this decision was supported by substantial evidence. (*See* AR 24 ("The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. There is no evidence that changes or increased demands have led to exacerbation of the claimant's symptoms and signs and to deterioration in the claimant's functioning.")).

Additionally, both state agency psychological consultants opined that Plaintiff had only moderate limitations in concentration and persistence, and no significant limitation in responding appropriately to changes in the work setting. (AR 90, 100, 111, 121). The ALJ found these opinions persuasive and incorporated the substance of their recommendations into the RFC. (AR 28). Although Plaintiff emphasizes the consultants' reference to a "low stress environment," the ALJ was not required to use that language verbatim so long as the RFC reasonably captured the functional limitations described. *See Miller v. Colvin*, No. 13-1383, 2014 WL 4218622, at *6 (W.D. Pa. Aug. 25, 2014) (upholding the ALJ's RFC finding despite the omission of low-stress because the RFC restricted Plaintiff to simple, routine, repetitive, and goal-oriented tasks with only occasional interaction with the public and co-workers and to an environment with only occasional changes in the work setting with no production rate pace).

Plaintiff also argues that the ALJ improperly rejected her testimony about the intensity, persistence, and limiting effects of her symptoms on the grounds that it was inconsistent with the record. She contends this analysis was necessarily flawed because the ALJ failed to properly address outcome-determinative medical opinion evidence and to account for limitations that are consistent with her self-described mental and manipulative impairments. (Pl.'s Br., ECF No. 15 at 24–25). But the ALJ provided a thorough discussion of Plaintiff's mental health history, noting her brief inpatient treatment in early 2020 and relatively limited care thereafter. (AR 26–28). The ALJ acknowledged Plaintiff's testimony regarding her symptoms but concluded that her functioning had remained stable with medication and that her treatment history—limited to primary care visits and inconsistent medication use—did not support greater restrictions. (*Id.*). And there is substantial evidence in the record to support the ALJ's conclusion. Indeed, no treating or

examining provider opined that Plaintiff's psychiatric symptoms precluded her from working or required more restrictive accommodations.

Ultimately, Plaintiff's arguments amount to a disagreement as to how the ALJ weighed the evidence. But the ALJ's findings are supported by substantial evidence in the record and thus entitled to deference. *See Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). Because the ALJ reasonably evaluated Plaintiff's mental impairments and provided a logical explanation for the limitations included in the RFC, remand is not warranted.

### B. The ALJ Did Not Err in Assessing Plaintiff's Hand Impairments or in Omitting Manipulative Limitations from the RFC

Plaintiff argues that the ALJ erred at step two and in formulating the RFC by failing to account for limitations related to her bilateral carpal tunnel syndrome and left thumb arthritis. (Pl.'s Br., ECF No. 15 at 19–23). Specifically, Plaintiff contends that these impairments, while deemed non-severe by the ALJ, nonetheless imposed functional restrictions that should have been reflected in the RFC, particularly because all three jobs identified at step five require frequent handling and fingering. (*Id.*). Plaintiff also asserts that the ALJ failed to consider her self-described manipulative limitations. (*Id.* at 24–25).

The Court finds no error. As the ALJ concluded, the record supports the characterization of Plaintiff's carpal tunnel syndrome as "mild" and her left thumb arthritis as "mild to moderate." (AR 21, 2175–76, 2415). Moreover, Plaintiff's treatment was conservative and sporadic. Specifically, Plaintiff was treated with corticosteroid injections and prescribed wrist splints, which she testified helped alleviate her symptoms. (AR 47, 65, 2176, 2215, 2228, 2247). There is no evidence in the record of ongoing or escalating care. Indeed, after her December 2022 follow-up visit—at which her carpal tunnel was again described as mild, and her arthritis was described as mild to moderate—Plaintiff did not return for additional treatment. (AR 2175–76).

Plaintiff's testimony regarding her hand symptoms is also inconsistent with the broader record. While she described difficulty gripping, dropping objects, and illegible handwriting, (AR 47–48), she also reported that she could prepare simple meals, drive, care for pets, and engage in fine motor leisure activities such as coloring and completing puzzles. (AR 48, 55–57). The ALJ reasonably concluded that her ability to perform these activities undermined and was inconsistent with her allegations of disabling hand limitations. (AR 28). It is well established that an ALJ may discount subjective complaints that are inconsistent with objective medical findings and daily functioning. *See* 20 C.F.R. § 404.1529(c)(4); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 146–47 (3d Cir. 2007).

In addition, just like her alleged mental health limitations discussed above, no medical source opined that Plaintiff had work-related manipulative limitations. The state agency consultants who reviewed the record specifically concluded that no handling or fingering restrictions were warranted. (AR 88, 98, 110, 120). The ALJ found these opinions persuasive and consistent with the overall evidence of record, including the absence of clinical findings indicating sustained functional impairment. (AR 28). A mere diagnosis—without evidence of resulting functional limitation—is insufficient to warrant RFC restrictions. *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004).

Plaintiff's contrary argument largely invites the Court to reweigh the evidence and substitute its judgment for the ALJ's. But where, as here, the ALJ's findings are supported by substantial evidence, they must be upheld. *See Biestek*, 587 U.S. at 103. Because the ALJ reasonably concluded that Plaintiff's hand impairments did not cause functional limitations beyond those already incorporated in the RFC, remand is not warranted.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

 

*[signature]*
**CHRISTINE P. O'HEARN**
**United States District Judge**